UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **FULLTIME RESTORATION INC** | **CASE NO.  2:21-CV-01981** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the court are cross-motions for summary judgment [docs. 16, 18] filed by plaintiff Fulltime Restoration, Inc. and defendant State Farm Fire & Casualty Company. The motions concern whether Fulltime's claims against State Farm are barred by an anti-assignment clause in the insurance policy issued by State Farm to the homeowner for whom Fulltime performed post-hurricane remediation work. Both motions are opposed.

**I.**
**BACKGROUND**

This suit arises from damage inflicted by Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. The storm allegedly caused significant damage to the home of Anthony Schlesinger in Lake Charles, Louisiana. *See* doc. 1, att. 2. At all relevant times, this home was insured under a policy issued by State Farm. Doc. 16, att. 3. The policy contains an anti-assignment clause, which provides:

> **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, whether the assignment is made prior to or after the loss, will be void. **We** will not recognize any assignment unless **we** give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign

to another party, in writing, payment of claim proceeds otherwise payable to *you*.

*Id.* at 31 (emphasis in original).

Schlesinger notified State Farm of his damages from Hurricane Laura and the company opened a claim. Doc. 8, ¶ 5. On September 13, 2020, Schlesinger entered into a contract with Fulltime to perform remediation services at his home. Doc. 1, att. 3. On the contract Schlesinger identified his insurer and claim number, but left blank the space for policy number. *Id.* at 1. He also agreed to "authorize direct payment by [State Farm] to [Fulltime] for all services rendered" and "assign all legal rights to recover any and all proceeds owed by [State Farm] regarding this loss, including but not limited to the right to bring appropriate legal action up to the amount owed for the services rendered by [Fulltime]." *Id.* The contract further provides:

> In the event the insurance company expressly prohibits post-loss assignment of benefits in the Client's insurance contract, Client hereby agrees to pay [Fulltime] the total amount recovered from the insurance company including all amounts allocated in a voluntary payment, settlement, or judgment for contractual damages, extra-contractual damages, costs, and attorney's fees.

*Id.* at 2.

Fulltime sent a copy of the contract to State Farm on September 16, 2020, at statefarmfireclaims@statefarm.com, an email previously used by Fulltime for such purposes. Doc. 18, att. 1, pp. 16–17, ¶¶ 37–39. Fulltime completed work at Schlesinger's property on October 14, 2020, and submitted an invoice to State Farm in the amount of $61,015.26 along with a copy of the contract and other documents. *Id.* at p. 18, ¶¶ 42–43. On November 10, 2020, Fulltime learned after speaking to an unidentified adjuster at State

2

Farm that partial payment had been sent in the form of a check for $16,060.51 made out to Fulltime and Schlesinger and mailed to Schlesinger. *Id.* at p. 19, ¶ 47.

Fulltime retained counsel to pursue full payment of the claim. *Id.* at p. 20, ¶ 53. Counsel sent a certified letter to State Farm on January 12, 2021, at the same email used by Fulltime in its prior correspondence. *Id.* at p. 86, ¶ 6. There counsel requested a copy of Schlesinger's insurance policy. *Id.* at p. 86, ¶ 7. In response counsel received a letter dated January 26, 2021, in which State Farm declined to provide a copy of the policy because Schlesinger was the policyholder. *Id.* at 150. State Farm also quoted the anti-assignment language from its policies. *Id.* Fulltime maintains that this is the first time it had notice of any such clause in Schlesinger's policy.

Fulltime then filed suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, as assignee of Schlesinger. Doc. 1, att. 2. State Farm removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. At the court's instruction, the parties have now filed cross-motions for summary judgment on whether the anti-assignment clause bars Fulltime's claims.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by

pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*,

179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). When the terms are ambiguous, however, that ambiguity must be construed against the insurer and in favor of coverage. *Id.* at 589–90. The contract must also be interpreted as a whole, with each provision reviewed in light of the others. *Calcasieu Parish Sch. Bd. v. Miller*, 92 So.3d 1200, 1202 (La. Ct. App. 3d Cir. 2012).

Anti-assignment clauses are generally valid under Louisiana law, and are valid in insurance contracts as long as it is clear that the prohibition applies to a post-loss assignment. *In re Katrina Canal Breaches Litig.*, 63 So.3d 955, 962 (La. 2011). On this point Louisiana differs from many other states, which reject restrictions on post-loss assignments. *Id.* However, "[s]uch a prohibition has no effect against an assignee who has no knowledge of its existence." La. Civ. Code art. 2653.

Here there is no dispute as to the validity of the clause, which voids assignment "whether [it] is made prior to or after the loss." State Farm contends that the clause is applicable because Fulltime had (1) actual knowledge at the time it filed suit and (2) constructive knowledge at the time Schlesinger executed the contract. Meanwhile, Fulltime asserts that the clause has no effect against it because it had no knowledge of it at the time of the assignment. It also asserts that State Farm effectively consented to or at least waived its right to contest the assignment by failing to object at first notice.

5

### A. State Farm's Motion

The court can find no case law supporting State Farm's position that the knowledge requirement that it runs from time of enforcement rather than execution of the assignment. As for the actual versus constructive knowledge argument, however, the only Louisiana court to consider Article 2653's knowledge requirement has determined that constructive knowledge is sufficient. *See Funderburg v. Superior Energy Servs., Inc.*, 83 So.3d 1148 (La. Ct. App. 5th Cir. 2011). The undersigned agrees with State Farm that anti-assignment clauses would become meaningless if their enforcement depended on an actual review of the policy. The court also notes that constructive knowledge entails a reasonable duty to inquire or investigate. *See*, *e.g.*, *Alvarado v. Lodge at the Bluffs, LLC*, 217 So.3d 429, 433 (La. Ct. 1st App. Mar. 29, 2017) ("The concept of constructive knowledge under Article 2317.1 imposes a reasonable duty on the owner or custodian to discover apparent defects in the thing in his *garde*."); *Watson v. Glenwood Reg. Med. Ctr.*, 163 So.3d 817, 823 (La. Ct. App. 2d Cir. Apr. 15, 2015) (Under La. Civ. Code art. 3492, "[t]he ultimate issue in determining constructive knowledge is the *reasonableness* of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct.") (emphasis in original; internal quotations removed.)

In *Funderburg*, the putative assignee admitted to prior possession of the document (a stock option agreement) containing the anti-assignment clause. Here, on the other hand, Fulltime denies receiving a copy of the policy until after this suit was filed and maintains it had no notice of the anti-assignment clause until after it attempted to enforce its rights against State Farm. Discovery may yield other factors bearing on Fulltime's dealings with

insurer or insured, and the reasonableness of its investigation (or lack thereof) into the terms of the policy. But at present there is not enough information to impute knowledge of the anti-assignment clause to Fulltime. Accordingly, State Farm's motion must be denied.

### B. Fulltime's Motion

As for Fulltime's motion, Fulltime maintains that State Farm consented to the assignment or at least waived its right to contest same by issuing payment to Fulltime after Fulltime had sent notice of the assignment. Because Louisiana Civil Code Article 2643 provides that an assignment "is effective against the debtor . . . only from the time the debtor has actual knowledge, or has been given notice of the assignment," Fulltime asserts that the assignment is enforceable as a matter of law. As State Farm points out, however, the terms of the policy issued to Schlesinger require that State Farm consent in writing to any assignment. When a contract explicitly requires written consent, a party's conduct cannot suffice as proof of same. *Premier Bank, Nat'l Ass'n v. Mosbacher*, 959 F.2d 562, 567 (5th Cir. 1992). Additionally, the conduct offered by Fulltime does not justify a finding of waiver. State Farm sent payment listing **both** Fulltime and the insured as payee after Fulltime on two occasions sent copies of its contract, which included the assignment provision. The fact that State Farm listed the insured as payee is evidence that it did not consider that any assignment of rights had taken place. It also asserted the anti-assignment clause against Fulltime beginning with Fulltime's attempts to collect payment directly in January 2021. Accordingly, there is no basis for finding that State Farm consented to the assignment or waived its right to object to same and Fulltime's motion must also be denied.

## IV.
### CONCLUSION

For the reasons stated above, both Motions for Summary Judgment [docs. 16, 18] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 7th day of January, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**